IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 09–cv–02052–WYD–KMT

ALISON MAYNARD, and
GERALD LEWIS,

      Plaintiffs,

v.

THE COLORADO SUPREME COURT OFFICE OF ATTORNEY REGULATION COUNSEL,
APRIL McMURREY,
JOHN GLEASON,
JAMES COYLE,
COLORADO SUPREME COURT,
MARY MULLARKEY,
GREGORY J. HOBBS, JR.,
NANCY RICE,
MICHAEL BENDER,
NATHAN BEN COATS,
ALEX MARTINEZ, and
ALLISON EID,

      Defendants.

---

**ORDER AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the court on Plaintiffs' "Motion for Leave to File Amended

Complaint." (Doc. No. 123, filed May 10, 2010 [hereinafter "Mot."].) Defendants filed their

"Response to Plaintiffs' Motion to Amend Complaint" on June 1, 2010. (Doc. No. 129

[hereinafter "Resp."].) Plaintiffs filed their "Reply on Motion for Leave to File Amended

Complaint" on June 22, 2010. (Doc. No. 135 [hereinafter "Reply"].) The Motion is now ripe for

the court's ruling and recommendation.

The court first addresses two procedural matters. First, the court notes that although Plaintiff Lewis joined in the proposed "(Revised) Amended and Supplemented Complaint" (Doc. No. 123, [hereinafter "Am. Compl."]) by affixing his signature thereto, the Motion clearly states that only Plaintiff Maynard *"for herself* . . . moves pursuant to Rule 15(a)(2), for leave to file Plaintiffs' [Amended Complaint]." (Mot. at 1) (emphasis added). While for this occasion only, the court assumes that Plaintiff Lewis's signature on the Amended Complaint indicates that he joins in the Motion as well, Plaintiffs are directed to take more care in drafting and compiling their court filings before submitting them to the court.

Second, the court notes that Plaintiffs do not detail the proposed amendments in their Motion whatsoever. Rather, Plaintiffs' Motion focuses almost entirely on this court's allegedly erroneous denial of Plaintiffs' "Motion for One-Day Extension to File Amended Complaint and Respond to Motion to Dismiss" (Doc. No. 117), as well as the amendments to Fed. R. Civ. P. 15 made effective on December 1, 2009. (Mot. at 2–4.) Plaintiffs do contend that amending to add claims for damages would overcome any defects in this court's jurisdiction (*id.* at 1–2); however, Plaintiffs do not include a substantive legal analysis as to why this might be true.

"When seeking leave of the court to amend a complaint, the motion to amend must detail the proposed amendments and the reasons why such amendments are necessary." *See, e.g., Walker v. Spence,* 07–cv–01848–PAB–KMT, 2009 WL 136677, at *1 (D. Colo. Jan. 15, 2009). Failure to do so constitutes sufficient grounds for denying a motion to amend. *See id.* Indeed, here Plaintiffs' Amended Complaint is forty-six pages long and, as compared with Plaintiffs' original Complaint (Doc. No. 1), has been largely revised. It is not incumbent upon this court to

inventory the proposed amendments contained in the Amended Complaint and speculate as to the reasons these amendments are necessary. Nevertheless, the court finds Defendants' Response and Plaintiffs' Reply sufficiently detail the amendments and have appraised the court of the parties' respective positions as to Plaintiffs' Motion.

However, because they are not represented in the existing Defendants' Response, the court remains in the dark as to why Plaintiff seeks to add the additional private individuals—namely, Victor Boog, Robert Swenson, Bruce Anderson, Judith Anderson, Glenn Porzak and Nelson Lane—as defendants. Moreover, Plaintiffs do not set forth any detail of their proposed allegations against these proposed defendants in their Motion. As such, to the extent that Plaintiff has failed to appraise the court as to the why leave should be granted to amend their complaint to add these proposed defendants, the court finds that Plaintiff's Motion should be denied without prejudice.

The court now turns to the merits of Plaintiffs' Motion as to the remaining Defendants and proposed defendants. As a threshold matter, Plaintiffs appear to argue, pursuant to Fed. R. Civ. P. 15(a), that they should be permitted leave to amend their Complaint "once as a matter of course" because Defendants have not yet filed a responsive pleading in this action. (*See* Mot. at 3–4; Reply at 1.) However, Plaintiffs admit that they rely on a prior version of Fed. R. Civ. P. 15 for this position. (Mot. at 3–4.) Effective December 1, 2009, Rule 15 has been amended to provide that "[a] party may amend its pleadings once as a matter of course within . . . 21 days after service of a responsive pleading *or* 21 days after service of a motion under Rule 12(b), (c) or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1) (emphasis added). Because Defendants

moved to dismiss Plaintiffs' Complaint pursuant to Fed R. Civ. P. 12(b)(1) and Fed. R. Civ. P.

12(b)(6) on November 9, 2009 (*see* "Defendants' Motion to Dismiss", Doc. No. 64 [hereinafter

"Mot. to Dismiss]) and because Plaintiffs' Motion was not filed until May 10, 2010,[1] Plaintiffs'

opportunity to amend as a matter of course has long since passed.  To the extent that Plaintiffs

maintain that their research did not reveal the 2009 amendments to Rule 15, the court notes that

all parties, including *pro se* parties, are required to be aware of the applicable court rules.  *See*

*Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002) (a plaintiff's *pro se* status does not entitle

her to application of different rules).

Because Plaintiffs can no longer amend as a matter of course, Plaintiffs must obtain leave

of court to amend their Complaint.  Fed. R. Civ. P. 15(a)(2).  Pursuant to Rule 15(a)(2), "[t]he

court should freely give leave [to amend the pleadings] when justice so requires."  *See also York*

*v. Cherry Creek Sch. Dist. No. 5,* 232 F.R.D. 648, 649 (D. Colo. 2005); *Aspen Orthopaedics &*

*Sports Medicine, LLC v. Aspen Valley Hosp. Dist.,* 353 F.3d 832, 842 (10th Cir. 2003).  The

Supreme Court has explained the circumstances under which denial of leave to amend is

appropriate.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper
> subject of relief, he ought to be afforded an opportunity to test his claim on the
> merits. In the absence of any apparent or declared reason-such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure to cure

---

[1]  To the extent that Plaintiffs argue the applicable version of Rule 15(a) should be
determined based on the date Plaintiffs filed their "Motion for One-Day Extension to File
Amended Complaint and Respond to Motion to Dismiss" for Extension of Time" (Doc. No.
117), the court's analysis does not change; that Motion was filed April 5, 2010, well after the
2009 Amendments to Rule 15(a) were rendered effective.

> deficiencies by amendments previously allowed, undue prejudice to the opposing
> party by virtue of allowance of the amendment, futility of amendment, etc.-the
> leave sought should, as the rules require, be "freely given." Of course, the grant or
> denial of an opportunity to amend is within the discretion of the District Court,
> but outright refusal to grant the leave without any justifying reason appearing for
> the denial is not an exercise of discretion; it is merely abuse of that discretion and
> inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Triplett v. LeFlore County, Okl.*, 712 F.2d

444, 446 (10th Cir.1983). Further, the Supreme Court guides that

> The Federal Rules reject the approach that pleading is a game of skill in which
> one misstep by counsel may be decisive to the outcome and accept the principle
> that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson,* 355 U.S. 41, 48 (1957).

Plaintiffs seek to amend their Complaint to dismiss Defendants Rice, Coats, Martinez,

Eid, the Colorado Supreme Court, and the Colorado Supreme Court Office of Attorney

Regulation Counsel (hereinafter "OARC"). (Resp. at 2.) Plaintiffs also seek to add damages

claims against Defendants McMurrey,[2] Gleason, Coyle, Mullarkey, Hobbs, and Bender. (*Id.*)

More specifically, Plaintiffs now seeks damages as relief pursuant to their 42 U.S.C. § 1983

claims. (*See* Am. Compl.) Thereafter, Plaintiffs seek to add claims pursuant to 42 U.S.C. §

1985, the Colorado Antitrust Act of 1992, Colo. Rev. Stat. 6–4–101, *et seq.,* the Colorado

Organized Crime Control Act, Colo. Rev. Stat. 18–17–101, *et seq.,* the Clayton Act, 15 U.S.C. §

15, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et*

---

[2] Both Plaintiffs and Defendants have referred to Defendant April McMurrey as "McMurrey" and "Seekamp," the latter ostensibly being her former surname. For the sake of consistency, the court refers to this defendant as Defendant McMurrey hereinafter.

*seq.*; and claims for defamation, and malicious prosecution and abuse of process. (*See id.*)
Finally, Plaintiffs seek to add William Lucero, presiding Disciplinary Judge of the Colorado
Supreme Court; Colorado District Court Judges David R. Lass, Karen Romeo, and Thomas
Ossola; Colorado Court of Appeals Judges Gilbert Roman, Jerry N. Jones, and Gale Miller; and
Janice Reed, Clerk of the Summit County District Court, as defendants. (Resp. at 2.)

Defendants object to Plaintiffs' Motion on two grounds. First, Defendants argue that
Plaintiff's Motion should be denied because Plaintiffs' proposed amendments would be futile,
insofar as they would not survive a motion to dismiss. (*Id.* at 2–12.) Second, Defendants argue
that permitting Plaintiffs to amend their Complaint would be inequitable under the circumstances
because Plaintiffs are "using Rule 15 to make the complaint salvage a lost case, to present
theories seriatim, and to knowingly delay raising an issue." (*Id.* at 12–13.)

## I.    FUTILITY

Defendants first argue that Plaintiffs' Motion should be denied because Plaintiffs'
proposed amendments would be futile.[3] (*Id.* at 2–12.) More specifically, Defendants argue that

---

[3] Plaintiffs argue that Defendants must wait to "file a motion for summary judgment or
Rule 12(b)(6) motion to dismiss" to raise their various positions against to Plaintiffs' Motion and
proposed amendments. (Reply at 3.) In support of this position, Plaintiffs point to Fed. R. Civ.
P. 7(b)(1), which states that "[a] request for court order must be made by motion." (*Id.*)
Plaintiffs miss the point. Here, *Plaintiffs* have requested a court order granting the leave to
amend their Complaint; Defendants have responded that such relief is not warranted because the
proposed amendments are futile and unduly delay. Futility of amendment is a well-established
basis for denying leave to amend. *Foman*, 371 U.S. at 182. Indeed, the policy justifications for
denying leave to amend based on futility of amendment under these circumstances are clear. It
prevents a plaintiff from amending the complaint to add wholly frivolous claims in order to moot
a defendant's pending dispositive motion. Accordingly, Defendants have properly raised their
various arguments against Plaintiffs' Motion and proposed amendments here, as opposed to

Plaintiffs' proposed amendments would not survive a motion to dismiss because (1) Defendants Mullarkey, Hobbs, Bender, and proposed defendants Lass, Romeo, Ossola, Roman, Jones, Miller, and Lucero are entitled to absolute judicial immunity; (2) proposed defendant Reed is entitled to qualified judicial immunity; (3) Defendants McMurrey, Gleason, and Coyle are entitled to absolute prosecutorial immunity; (4) this Court lacks jurisdiction over Plaintiffs' proposed state law claims; (5) Plaintiffs' proposed Clayton Act claim is barred by the state action immunity doctrine; and, finally, (6) Plaintiffs' claims and proposed claims generally fail to state a claim for relief.  (*Id.*)

A district court is clearly justified in denying a motion to amend as futile only if the proposed amendment cannot withstand a motion to dismiss or otherwise fails to state a claim. *See Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992).  "Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile.  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir. 1999).  To withstand a motion to dismiss, a complaint, when taken as true and in the light most favorable to the plaintiff, "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ---U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A court may deny leave to amend if the defendants would be entitled to the

raising them in a Rule 12(b)(6) or Rule 56 motion after the proposed Amended Complaint is in place.

defense of judicial, prosecutorial, or qualified immunity. *See, e.g., Mullen v. Household Bank-Federal Sav. Bank,* 867 F.2d 586, 588 (10th Cir. 2008) (judicial immunity); *Goldyn v. Clark County, Nev.,* 346 F. App'x 153, 155 (9th Cir. 2009) (prosecutorial immunity); *Slusher v. Carson,* 540 F.3d 449, 547 (6th Cir. 2008) (citing *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.,* 32 F.3d 989, 995–996 (6th Cir. 1994)) (qualified immunity).

### A.    *Absolute Judicial Immunity*

Defendants first argue that proposed amendments against Defendants Mullarkey, Hobbs, and Bender, proposed Defendants Lass, Ossola, Romeo, Roman, Jones, and Miller (collectively, hereinafter the "Judge Defendants"), and proposed defendant Lucero are futile because these defendants are entitled to absolute judicial immunity.  (Resp. at 3–5, 7–8.)  Plaintiffs acknowledge the doctrine of absolute judicial immunity, but contend that the allegations against the Judge Defendants complain of non-judicial acts or judicial acts taken in the complete absence of jurisdiction.  (Reply at 4–5.)

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray,* 386 U.S. 547, 553–54 (1967).  "Absolute immunity is . . . necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou*, 438 U.S. 478, 512 (1978).  Judicial immunity "applies even when the judge is accused of acting maliciously or corruptly" as judicial immunity acts for "'the benefit of the public, whose interest it is that judges should be at liberty to exercise their functions with independence and without fear of consequence.'" *Pierson,* 386 U.S. at 554

(quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 349 n.16 (1871)).

Federal courts "have proceeded on the assumption that common-law principles of legislative and judicial immunity were incorporated into our judicial system and that they should not be abrogated absent clear legislative intent to do so." *Pulliam v. Allen*, 466 U.S. 522, 529 (1984). Thus, judicial immunity extends to claims of violations of constitutional rights under 42 U.S.C. § 1983, *Stump v. Sparkman,* 435 U.S. 349, 356 (1978), conspiracy claims under 42 U.S.C. § 1985, *Van Sickle v. Holloway,* 791 F.2d 1431 (10th Cir. 1986)*,* and claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, *Van Beek v. AG-Credit Bonus Partners,* 316 F. App'x 554, 555 (9th Cir. 2008).

A judge will only lose absolute immunity from a suit for damages for (1) "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity" or (2) judicial actions "taken in the complete absence of all jurisdiction." *Mireles v. Waco,* 502 U.S. 9, 11-12 (1991). "The factor determining whether an act by a judge is a 'judicial' one relates to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they deal with the judge in his judicial capacity." *Stump*, 435 U.S. at 360.

Having reviewed the allegations contained in Plaintiffs' proposed Amended Complaint, it is clear that the Judge Defendants are entitled to absolute judicial immunity. The court initially addresses Plaintiffs' allegations that clearly constitute judicial acts, insofar as they are based on Defendants' actions in cases they presided over. More specifically, Plaintiff's allegations against Defendant Bender complain only that he wrote opinions that were improperly influenced

by Defendant Hobbs. (Am. Compl. ¶ 67.) Similarly, Plaintiffs allege that the Colorado Court of Appeals Judges—proposed Defendants Roman, Jones, and Miller—rendered decisions contrary to law. (*Id.* ¶¶ 76, 122.) Plaintiffs allege that proposed Defendant Ossola "never decided [] issues --which were soundly based on jurisdictional defects," levied a "$20,000 attorney fee sanction" against Plaintiff Maynard, and "refuse[d] to rule on allegations Plaintiff Maynard brought to him in good faith." (*Id.* ¶¶ 72–73, 188, 194.) Defendant Romeo allegedly "required [Plaintiff Maynard] to defend" against a "frivolous" motion for attorney fees, continued a hearing on the attorney fees, and refused to consider a dismissal and default, all in a manner contrary to law. (*Id.* ¶¶ 55–57.) Defendant Lass dismissed Plaintiff Lewis's case for failure to prosecute, resulting in various losses to Plaintiff Lewis. (*Id.* ¶ 104–05, 209(b).) And Defendant Mullarkey alleged denied Plaintiff Maynard's discovery request for Defendant Hobbs' emails. (*Id.* ¶¶ 127, 164.)

Ultimately, it appears that Plaintiffs largely disagreed with the Judge Defendants' rulings and decisions. However, each of the above actions clearly constitute judicial acts as they are actions normally performed by a judge, and Plaintiffs dealt with Defendants in their judicial capacities. *Mireles,* 502 U.S. at 11–12. Because Plaintiffs do not allege that any of the above actions were taken in complete absence of all jurisdiction, the Judge Defendants are entitled to absolute judicial immunity. *Id.*

Plaintiffs do allege that proposed Defendant Lass "lacked jurisdiction . . . and knew he lacked jurisdiction" in taking in number of judicial acts in a Colorado state case involving Plaintiff Lewis. (Am. Compl. ¶¶ 19–26, 104–05, 209.) While judges are not entitled to judicial

immunity for judicial actions taken in the complete absence of all jurisdiction, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Id.* at 356. A judge does not lose immunity for acts that were "merely 'in excess of his jurisdiction.'" *Lerwill v. Joslin,* 712 F.2d 435, 439 (10th Cir. 1983); *see also Duty v. City of Sprindale, Ark.,* 42 F.3d 460, 462 (8th Cir. 1994) (a court acts in excess of jurisdiction if the act "is within [her] general power of jurisdiction but is not authorized because of certain circumstances"). Rather, a judge only relinquishes absolute immunity where he acts "clearly without any colorable claim of jurisdiction." *Snell v. Tunnell,* 920 F.2d 673, 686 (10th Cir. 1990) (internal citations omitted); *see also Lerwill*, 712 F.2d at 438 (a judge is absolutely immune for judicial acts "for which the judge has at least a semblance of jurisdiction").

Here, Plaintiffs make only conclusory allegations, without the enhancement of any factual averments, that proposed Defendant Lass lacked jurisdiction over that case. While Plaintiffs attempt to save their claims against proposed Defendant Lass in their Reply by stating that Lass "acted in complete absence of jurisdiction when he rule that Elk Dance owned the Spring Creek Ranch plan for augmentation, since jurisdiction over a water matter is exclusive in the water court" and "by removing that plan from the subdivision . . . which by law is committed to the county commissioners," such allegations must be contained in the proposed Amended Complaint itself. (Reply at 5.) More importantly, these additional allegations are nonetheless insufficient to overcome the fact that, as a Colorado state district court judge, proposed Defendant Lass had general jurisdiction over civil matters. Thus, even assuming proposed Defendant Lass did not have jurisdiction to take the specific acts alleged, he had general

jurisdiction as to the case over which he presided. *See Duty,* 42 F.3d at 462–63 (suggesting that a clear absence of jurisdiction might exist where a court of limited jurisdiction adjudicates a case clearly outside its jurisdiction, "such as when a probate court conducts a criminal trial"). As such, the court finds that Plaintiffs have failed to clear the very high bar of demonstrating that Defendant Lass acted in the clear absence of all jurisdiction. Consequently, proposed Defendant Lass would be entitled to absolute judicial immunity as to Plaintiffs' proposed amendments.

Nor are Plaintiffs' proposed amendments saved by allegations that several Defendants communicated *ex parte* with parties or other individuals (Am. Compl. ¶¶ 58, 66, 76, 112–13), engaged in a conspiracy against Plaintiffs (*id.* ¶¶ 69, 76, 128), or accepted bribes in exchange for judicial acts (*id* ¶¶ 49–50, 59). "Judges enjoy absolute immunity from liability . . . even when the judge allegedly conspires with private parties." *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994) (citing *Dennis v. Sparks,* 449 U.S. 24, 28–32 (1980)). Thus, allegations that a judge has performed judicial acts pursuant to a bribe are not sufficient to overcome immunity. *Holloway v. Walker,* 765 F.2d 517 (5th Cir. 1985) (citing *Sparks v. Duval Ranch Co.,* 604 F.2d 976 (5th Cir. 1979) *aff'd sub nom., Sparks,* 449 U.S. 24). Similarly, even when they might have ruinous implications for a party, a judicial officer's *ex parte* communications do not abrogate a judicial officer's absolute judicial immunity. *Crudup v. Schulte,* 12 F. App'x 682, 686 (10th Cir. 2001); *cf. Sparkman*, 435 U.S. at 357–64 (holding that a judge's *ex parte* approval of a young woman's sterilization was a judicial act performed within the apparent scope of the court's broad, general jurisdiction).

Finally, the court finds that proposed Defendant Lucero is also entitled to judicial immunity. Plaintiffs' allegations against proposed Defendant Lucero relate to actions taken in his role as the presiding disciplinary judge over Plaintiff Maynard's disciplinary proceedings. (*See* Am. Compl. ¶ 6.) Specifically, Plaintiffs allege that proposed Defendant Lucero required Plaintiff Maynard to turn over her case file, vacated a hearing, denied Plaintiff Maynard her costs at a show-cause hearing, and refused to grant a stay of the disciplinary proceedings pending an appeal, in violation of applicable procedural rules. (*Id.* ¶¶ 87–90, 147, 156.) Plaintiffs further allege that Defendant Lucero issued disciplinary opinions that "faulted [Plaintiff Maynard] for exercising [her] First Amendment rights" and engaged in an "illegal agreement . . . to deny [Plaintiff Maynard] due process and equal protection by selectively prosecuting [her] in disciplinary proceedings." (*Id.* ¶ 160.) And finally, Plaintiffs alleged that Defendant Lucero substituted his judgment for that of a federal judge in violation of the doctrine of *res judicata* and the Supremacy Clause of the United States. (*Id.* ¶¶ 133, 161).

Individuals who adjudicate disciplinary proceedings engage in work that is "'functionally comparable' to that performed by judges and prosecutors." *Verner v. State of Colorado,* 533 F. Supp. 1109, 1115 (D. Colo. 1982), *aff'd* 716 F.2d 1352 (10th Cir. 1982). Plaintiffs' allegations against Defendant Lucero clearly refer to judicial acts taken by Defendant Lucero pursuant to his authority as the presiding disciplinary judge over Plaintiff Maynard's disciplinary proceedings. Thus, Defendant Lucero is entitled to absolute judicial immunity. And, as discussed above, Plaintiffs' allegations that Defendant Lucero engaged in an "illegal agreement" against Plaintiff

Maynard do not affect Defendant Lucero's entitlement to judicial immunity. *Hunt,* 17 F.3d at 1267 (judges enjoy absolute immunity even when they allegedly conspire with parties).

To summarize, the Judge Defendants—more specifically, Defendants Bender, Mullarkey, Hobbs, Lass, Romeo, Ossola, Roman, Jones, Miller— and proposed Defendant Lucero are all entitled to judicial immunity because their actions constituted judicial acts for which they had at least some semblance of jurisdiction. *Lerwill v. Joslin,* 712 F.2d 435, 438 (10th Cir. 1983). Consequently, Plaintiff's proposed amendments against these Defendants and proposed Defendants are properly denied as futile.

### B.    *Defendants McMurrey, Coyle, and Gleason*

Defendants next argue that Defendants McMurrey, Coyle, and Gleason are entitled to absolute prosecutorial immunity. More specifically, Defendant argue that as employees of OARC, Defendants McMurrey, Coyle, and Gleason (hereinafter "OARC Defendants") are charged with investigating and prosecuting attorney discipline cases and, as such, are entitled to prosecutorial immunity for actions taken in this role. (Resp. at 8–9.) Plaintiffs maintain that a number of actions taken by the OARC Defendants, including allegedly defaming Plaintiff Maynard and engaging in fishing expeditions to bring new disciplinary charges, are not covered by the defense of prosecutorial immunity. (Reply at 5–7.)

Prosecutors enjoy absolute immunity from civil suits for damages asserted against them for actions taken "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman,* 424 U.S. 409, 427 (1976); *Meade v. Grubbs,* 841 F.2d 1512, 1532-33 (10th Cir. 1988). The question of whether a prosecutor is entitled to absolute immunity for his actions

depends on the nature of the function performed by the prosecutor at the time of the alleged misconduct. *Buckley v. Fitzsimmons,* 509 U.S. 259, 276 (1993). Actions taken as an advocate, or more specifically "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State" enjoy absolute immunity. *Id.* at 272. However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* at 273. Instead, such acts enjoy only qualified immunity. *Id.* If prosecutorial immunity does attach, it is absolute, and therefore applies to cases of malicious or bad faith prosecution, *Imbler,* 424 U.S. at 437, even if it is obvious "to the prosecutor that he is acting unconstitutionally and thus beyond his authority." *Lerwill,* 712 F.2d at 437-38.

The Tenth Circuit has extended prosecutorial immunity to officials charged with pursuing attorney discipline. *Stein v. Disciplinary Bd. of Supreme Court of N.M.,* 520 F.3d 1183, 1193–94 (10th Cir. 2008). However, initially, the Tenth Circuit construed the immunity of attorney discipline counsel broadly, holding that prosecutorial immunity extends to "bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline." *Clulow v. Oklahoma,* 700 F.2d 1291, 1298 (10th Cir. 1983). In *Stein,* the Tenth Circuit acknowledged that "*Clulow's* language indicating that absolute immunity extends to disciplinary officials' investigative functions appears to conflict with later Supreme Court precedent that grants only qualified immunity to the investigative activities of prosecutors." 520 F.3d at 1193 (citing *Burns v. Reed,* 500 U.S. 478, 495 (1991)). Nonetheless, because the

plaintiff's allegations in *Stein* related only to prosecutorial, rather than investigative, functions, the court ultimately left any potential conflict between *Clulow's* dictum and subsequent Supreme Court precedent for another day. *Id.* at 1193–94.

It is clear that attorney discipline counsel's actions taken in "preparation for trial in the role of advocate are protected by absolute immunity." *Id.* at 1194 (citing *Buckley,* 509 U.S. at 273 (2009)). "One such protected act is the decision to prosecute." *Id.* at 1193 (citing *Imbler,* 424 U.S. at 431). Indeed, "[d]eciding whether to bring charges . . . is a quintessential prosecutorial function protected by absolute immunity." *Id.* at 1194 (citing *Buckley,* 509 U.S. at 273)). Even more, where a plaintiff alleges that disciplinary counsel conducted an inadequate investigation *resulting in* frivolous disciplinary proceedings, this is likewise covered by absolute immunity because to hold otherwise would nonetheless implicate counsel's decision to prosecute. *Id.*

The court first finds that to the extent that Plaintiffs' proposed amendments allege that the OARC Defendants maliciously prosecuted Plaintiff Maynard, the OARC Defendants are absolutely immune. More specifically, Plaintiffs' Amended Complaint is replete with allegations that the OARC Defendants brought "frivolous" or "groundless" attorney discipline proceedings against Plaintiff Maynard. (*See, e.g.,* Am. Compl. ¶¶ 43, 46, 82–83, 100, 113, 121.) At other times, Plaintiffs allege that the OARC Defendants failed to pursue attorney discipline against other attorneys, even when it was clearly warranted. (*Id.* ¶¶ 121, 153–154.) At their most robust, Plaintiffs' proposed allegations maintain that the OARC Defendants "selective prosecution" of Plaintiff Maynard evinced a "plan" or conspiracy against Plaintiff Maynard. (*Id.*

16

¶¶ 45, 110.)  Plaintiffs also propose to allege that the OARC Defendants violated their own

policy by bringing disciplinary proceedings before the conclusion of the underlying lawsuit

featuring the wrongful conduct.  (*Id.* ¶¶104, 10, 146, 148, 163.) And finally, Plaintiffs seek to

allege that in one of her disciplinary proceedings, the OARC Defendants sought the wholly

unwarranted sanction of Plaintiff Maynard's disbarment.  (*Id.* ¶ 93.)  However, it is clear that

each of these proposed allegations hope to assign liability for the OARC Defendants' decision to

prosecute.  As such, the court finds that the OARC Defendants would be entitled to prosecutorial

immunity against these allegations.

Plaintiffs also seek to allege claims that, while not relating to their decision to prosecute,

would nonetheless assign liability to the OARC Defendants' actions as advocates for the State of

Colorado.  More specifically, Plaintiffs' proposed amendments allege that the OARC Defendants

lied to the presiding disciplinary judge and included false statements in their briefs (Am. Compl.

¶ 62–63), contravened its own policy by providing the underlying disciplinary complaint in order

to influence a witness before her deposition (*id.* ¶ 142), and even condoned witnesses being paid

for their testimony (*id.* ¶ 85).  However, because such actions are taken in a prosecutors' role as

advocates for the state and are otherwise intimately associated with the judicial phase of a

prosecution, other cases have found such actions to fall within the guise of absolute prosecutorial

immunity.  *Cohen v. Oasin,* 863 F. Supp. 225, 229 (E.D. Pa. 1994) (government counsel who

allegedly made false statements to administrative tribunal entitled to prosecutorial immunity);

*Stokes v. City of Chicago,* 660 F. Supp. 1459 (N.D. Ill. 1987) (prosecutor who allegedly

influenced prospective witnesses by paying them for their testimony entitled to prosecutorial

immunity). Accordingly, the court finds that the OARC Defendants would be entitled to prosecutorial immunity as to these allegations.

Plaintiffs do argue that their proposed allegations that Defendant McMurrey used discovery—specifically, the production of Plaintiff Maynard's case file at a deposition—in order to "support bringing new charges" against Maynard are not protected by absolute immunity because these actions were investigatory, and therefore not taken in Defendant McCurrey's prosecutorial capacity. (Reply at 7.) As outlined above, a prosecutor is not entitled to absolute prosecutorial immunity for actions taken in their investigatory function; instead such acts are only entitled to qualified immunity. *Imbler,* 424 U.S. at 430-31. However, the Tenth Circuit has "recognized that absolute immunity may attached even to . . . investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484 (10th Cir. 1991) (internal citations omitted); *see also Gobel v. Maricopa County,* 867 F.2d 1201, 1204 (9th Cir. 1989) (actions taken as part of prosecutor's preparation of case are absolutely immune even if such actions could be characterized as investigative); *Burns,* 500 U.S. at 495 (holding that the proper inquiry is "whether the prosecutor's actions are closely associated with the judicial process"). Moreover, "it is equally clear that advocacy is not limited to . . . arguing in the courtroom." *Mink v. Suthers,* 482 F.2d 1244, 1261 (10th Cir. 2007).

Consequently, although Plaintiffs characterize Defendant McMurrey's actions as investigatory insofar as she allegedly sought to obtain evidence to support future disciplinary charges against Plaintiff Maynard, it is clear that Defendant McMurrey participated in discovery

to prepare her case against Plaintiff Maynard for hearing. Moreover, the discovery process is indeed part and parcel of the judicial process. *See Burns,* 500 U.S. at 495; *see also Bernard v. County of Suffolk,* 356 F.3d 495, 498 (2d Cir. 2004) ("as long as prosecutor acts with colorable authority, absolute immunity shield his performance of advocate functions regardless of the motivation"). Therefore, even if Defendant McMurrey's alleged actions could be characterized as investigatory, the court finds that Defendant McMurrey would be entitled to absolute immunity against these allegations.

Ultimately, only a few of Plaintiffs' proposed allegations against the OARC Defendants relate to actions taken outside the judicial process. First, Plaintiffs seek to allege that the Defendant McMurrey made statements to Robert Swenson, which he reconveyed to Plaintiff Lewis in or around December of 2008, that "'the Supreme Court is going to get Maynard' and that it is 'tired of Maynard filing these cases and motions.'" (Am. Compl. ¶ 61.) However, the court finds that Plaintiffs' proposed amendments are devoid of any factual averments as to when or whether Defendant McMurrey actually made any such statement to Mr. Swenson. *Iqbal,* S. Ct. at 1949 (a complaint does not suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). More importantly, the court notes that Plaintiffs' allegations that Defendant McMurrey made such a statement have no independent legal significance, but instead are only are used to provide circumstantial evidence that Defendants conspired to bring disciplinary proceedings against Plaintiff Maynard for political reasons. (Am. Compl. ¶ 155.) As already outlined, Defendant McMurrey is absolutely immune

against allegations that she and the other OARC Defendants maliciously prosecuted Plaintiff Maynard.

Second, Plaintiffs allege that the OARC defamed Plaintiff Maynard by providing one of the disciplinary complaints against Plaintiff Maynard to a third party, who then proceeded to feature the complaint in an online article under the title of "DISCIPLINE!" (Am. Compl. ¶ 96.) Based on these allegations, Plaintiffs claim that the OARC Defendant defamed Plaintiff Maynard because the underlying case had not yet reached a hearing and, therefore, featuring the complaint under the caption "DISCIPLINE!" was false. (*Id.* ¶¶ 176–178.)

A prosecutor or other state attorney is only entitled to qualified, not absolute immunity, when holding a press conference and making comments to the media. *Joseph v. Yocum,* 53 F. App'x 1, 3 (10th Cir. 2002) (citing *Buckley,* 509 U.S. at 277–78). Qualified immunity shields a government official from liability so long as his or her actions do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818; *McFall v. Bednar,* 407 F.3d 1091, 1087 (10th Cir. 2005). Plaintiff Maynard alleges that the OARC Defendants "caused the publication of defamatory material" about her, which "resulted in enormous and irreparable damage to [her] reputation, career, and ability to earn [a] living, and has caused . . . [her] severe mental anguish, humiliation, pain and suffering." (Am. Compl. ¶ 176–78.) However, standing alone, Plaintiffs' allegations fail to state any constitutional violation. *See McGhee v. Draper,* 639 F.2d 639, 643 (10th Cir. 1981) (stating that "stigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action"); *Cf. Arnold v. McClain,* 926

F.2d 963, 968 (10th Cir. 1991) (holding that governmental employee must show publication of false and defamatory information in connection with job termination in order to establish claim of liberty interest violation). While Plaintiff Maynard clearly alleges that she lost the ability to practice law due to the various disciplinary proceedings against her, Plaintiffs do not allege that Plaintiff Maynard's inability to practice was caused by the OARC Defendants' allegedly defamatory statements.

Similarly, the court finds that the OARC Defendants are entitled to qualified immunity to the extent Plaintiffs propose to allege that the OARC Defendants' publishing of the disciplinary complaint under the heading "DISCIPLINE!" and a non-final version of an opinion from one of the disciplinary proceedings amounted to a violation of Plaintiff Maynard's constitutional right to equal protection. (Am. Compl. ¶¶ 150–51.) Plaintiffs have not set forth, nor can the court otherwise find, any case establishing that such conduct amounts to a violation of equal protection. *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992) (for law to be clearly established for purposes of qualified immunity, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains").

Altogether, the court finds that the OARC Defendants are entitled to either absolute prosecutorial immunity against Plaintiffs' proposed amendments, or qualified immunity because Plaintiffs fail to allege any constitutional violation. Accordingly, the court finds that Plaintiffs' Motion, to the extent that it seeks to assert claims against the OARC Defendants, is properly denied as futile.

### C.    *Declaratory and Injunctive Relief*

Upon review of Plaintiffs' proposed Amended Complaint, the court notes that Plaintiffs have slightly altered their claims for declaratory and injunctive relief as compared to their original Complaint.  However, the court finds that for substantially the same reasons outlined by District Judge Brimmer in ruling on Plaintiffs' Motion for Preliminary Injunction (*See* Transcript Ruling on Motion for Preliminary Injunction, Doc. No. 21, filed Sept. 19, 2009 [hereinafter "Hr'g Tr.") Plaintiffs claims for declaratory and injunctive relief are futile.

More specifically, Plaintiffs claims for declaratory and injunctive relief ask this court to enjoin ongoing state disciplinary proceedings and vacate final opinions rendered in other disciplinary proceedings.  The *Rooker-Feldman* doctrine provides that federal courts, other than the United States Supreme Court, lack jurisdiction to adjudicate claims seeking review of state court judgments.   *See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).  The *Rooker-Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."   *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The *Rooker-Feldman* doctrine bars not only cases seeking direct review of state court judgments; it also bars cases that are "inextricably intertwined" with a prior state court judgment.  *See Feldman,* 460 U.S. at 482 n.16.  "Where a plaintiff seeks a remedy that would disrupt or undo a state court judgment, the federal claim is inextricably intertwined with the state court judgment."  *Crutchfield v. Countrywide Home Loans,* 389 F.3d 1144, 1148 (10th Cir.

2004).  The *Rooker-Feldman* doctrine applies to federal review of state disciplinary proceedings. *Razatos v. Colo. Supreme Court,* 746 F.2d 1429 (D. Colo 1984).

Here, Plaintiff seeks injunctive relief in the form of vacating the opinions rendered in a number of finalized disciplinary proceedings.  (Am. Compl. ¶ 162–63.)  Plaintiffs also seek declaratory relief adjudging that their constitutional right to appellate review under the Colorado Constitution was violated. The court finds that Plaintiffs' claims are inextricably intertwined with the decisions rendered in those disciplinary proceedings, and their proposed amendments do not alter this analysis.  As such, the court finds that to the extent that Plaintiffs seek to amend the claims in their Complaint for injunctive relief and declaratory relief, Plaintiffs' Motion is properly denied as futile.

Plaintiffs also seek an order "enjoining the hearing board in 09 PDJ 028," which is ostensibly an ongoing disciplinary proceeding.  Under *Younger v. Harris,* 401 U.S. 37 (1971), federal courts are to avoid interference with ongoing state proceedings if the state court provides an adequate avenue for relief.  A federal court must abstain from exercising jurisdiction when: when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."  *Weitzel v. Div. of Occupational and Prof'l Licensing.,* 240 F.3d 871, 875 (10th Cir.2001) (internal citations omitted).  In the case of state bar disciplinary hearings, the proceedings must be within the constitutionally prescribed jurisdiction of the state supreme court.  *Middlesex County Ethics*

*Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423 (1982).   If these conditions are met,

abstention is nondiscretionary and must be invoked, absent extraordinary circumstances. *Id.*

First, the disciplinary proceedings at issue here are within the constitutionally prescribed

jurisdiction of the Colorado Supreme Court.  *Goodpaster v. Supreme Court of Colo.*, 766 F.

Supp. 917, 919 (D. Colo. 1991).  Second, states "have an extremely important interest in

maintaining and assuring the professional conduct of the attorneys it licenses." *Middlesex*

*County Ethics Comm'n,* 457 U.S. at 434.  And finally, the court finds that although Plaintiffs

disagree with the conclusions of the disciplinary board and the Colorado Supreme Court,

Plaintiffs had an adequate opportunity to raise the claims featured in their proposed Amended

Complaint.  As such, the court finds that *Younger* abstention applies in this case.

An exception exists to *Younger* abstention "'in cases of proven harassment or prosecution

undertaken in bad faith without hope of obtaining a valid conviction and perhaps other

extraordinary circumstances where irreparable injury can be shown.'" *Amanatullah v. State Bd.*

*of Medical Examiners,* 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting *Perez v. Ledesma,* 401

U.S. 82, 85 (1971)).  However, District Judge Brimmer already concluded that such

circumstances do not exist in this case because it did not appear that the disciplinary proceedings

were frivolous.  (Hr'g Tr. at 16–18.)  The court finds that Plaintiffs' proposed amendments do

not overcome this holding.

Accordingly, to the extent that Plaintiffs' proposed amendments alter their existing

claims for declaratory and injunctive relief, the court finds that it does not have subject matter

jurisdiction to consider such claims.  Therefore, the court finds that Plaintiffs' proposed

amendments to this effect are properly denied as futile.

### D.     *Defendant Reed*

Defendants claim that, as the Clerk of Court for the Summit County District Court,

Defendant Reed is entitled to qualified immunity as to Plaintiffs' proposed allegations.  Plaintiffs

do not specifically respond to Defendants' position that Defendant Reed is entitled to qualified

immunity.

"[C]ourt clerks are generally entitled only to qualified immunity."  *Stein,* 520 F.3d at

1191. While court clerks are entitled to absolute immunity in two circumstances, namely, when

performing quasi-judicial duties and when a court clerk acts "under the command of a court

decree or explicit instructions from a judge," *id.*, Defendants argue only that Defendant Reed is

entitled to qualified immunity.  (Resp. at 6.)

As outlined above, the doctrine of qualified immunity protects  "government officials

performing discretionary functions . . . from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known."  *Harlow,* 457 U.S. at 818.  "When a defendant asserts the defense of

qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity."

*Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (citing *Medina v. Cram,* 252 F.3d

1124, 1128 (10th Cir. 2001)).  Plaintiff bears a "heavy burden" under a two-pronged analysis.

*Buck v. City of Albuquerque,* 549 F.3d 1269, 1277 (10th Cir. 2008).  The court must determine

(1) whether the plaintiff has sufficiently alleged violation of a statutory or constitutional right;

and (2) whether the right was clearly established at the time of the violation. *Pearson v. Callahan,* — U.S. —, 129 S. Ct. 808, 817 (2009). Courts are permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Id.* at 818.

To satisfy the first prong, a plaintiff must show that a defendant's conduct violated a constitutional or statutory right. *See Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir. 1995). Identification of a constitutional right in the abstract is insufficient; instead a plaintiff must precisely articulate the right that was allegedly violated and specifically identify the defendant's conduct that violated that right. *See Green v. Post* 574 F.3d 1294, 1300 (10th Cir. 2009).

The court finds that Plaintiffs have failed to identify how Defendant Reed's alleged conduct violated any constitutional right. Indeed, while Plaintiffs list a number of factual allegations against Defendant Reed (Am. Compl. ¶¶ 51–53), Plaintiffs fail to connect these allegations with any particularly to their constitutional claims. The fact that Plaintiffs are proceeding *pro se* does not alleviate their burden of demonstrating how Defendant Reed's conduct amounted to a constitutional violation. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Accordingly, the court finds that Plaintiffs have failed to establish the first prong of the qualified immunity.

### E.      *Jurisdiction over State Law Claims*

Defendants argue that to the extent that Plaintiffs seek relief against Defendants for violations of the Colorado Antitrust Act of 1992, Colo. Rev. Stat. 6–4-101, *et seq.,* and the

Colorado Organized Crime Control Act, Colo. Rev. Stat. 18–17–101, *et seq.* this court lacks

jurisdiction to decide whether state officials violated state law.  (Resp. at 9–10.)  Plaintiffs have

not responded to this particular argument in their Reply.

In *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89 (1984), the Supreme

Court held that the Eleventh Amendment prohibited a federal district court from ordering state

official to conform their conduct to state law.  There, the Court ruled that, although absent

Eleventh Amendment immunity, the state law claims would be within federal jurisdiction as

claim pendent to proper claims under federal statutes or the federal Constitution, the court rule

that the pendent jurisdiction doctrine could not override the state's Eleventh Amendment

immunity.  *See id.* at 121.  All of the Defendants and proposed Defendants considered in this

Recommendation are state officials.  Consequently, to the extent that Plaintiffs' proposed

amendment seeks to establish that Defendants violated the Colorado Antitrust Act, Colo. Rev.

Stat. 6–4–101, *et seq.,* or the Colorado Organized Crime Control Act, Colo. Rev. Stat.

18–17–101, *et seq.,* the Eleventh Amendment precludes this court from adjudicating such claims.

*Pennhurst,* 494 U.S. at 121; *see also San Juan County, Utah v. United States,* 503 F.3d 1163,

1182 n.4 (10th Cir. 2007).  Therefore, the court finds that Plaintiffs' proposed amendments as to

these claims are properly denied as futile.

### F.    *Violations of the Clayton Act*

Although vague, Plaintiffs' proposed claim that the OARC Defendants and Defendant

Mullarkey violated the Clayton Act, 15 U.S.C § 15, alleges that the "activities of these

Defendants constitute an illegal combination or conspiracy in restraint of trade and unlawful

permission to corporate law firms to monopolize the practice of law in Colorado." (Am. Compl. ¶ 199.) Defendants argue that to the extent that Plaintiffs' proposed amendments include a claim against the OARC Defendants and Defendant Mullarkey for violations of the Clayton Act, Plaintiffs' proposed amendments are barred by the state action immunity doctrine.

"The 'state action immunity' doctrine originated in *Parker v. Brown,* 317 U.S. 341 (1943), and 'exempts qualifying state and local government regulation from federal antitrust, even if the regulation at issue compels an otherwise clear violation of federal antitrust laws.'" *Zimomra v. Alamo Rent-A-Car, Inc.,* 111 F.3d 1495, 1498 (10th Cir. 1997) (quoting *Cost Mgmt. Servs. v. Washington Natural Gas Co.,* 99 F.3d 937, 941 (9th Cir 1996)). In *Hoover v. Ronwin,* 466 U.S. 558, 568 (1984), the Supreme Court acknowledged that the doctrine applies to state supreme courts, acting in their legislative capacities, as well as to other individuals or entities acting pursuant to state authorization. However, the state immunity doctrine applies only to state officials acting pursuant to a "clearly articulated and affirmatively expressed state policy." *Id.* at 569; *see also Oberndorf v. City and County of Denver,* 696 F. Supp. 553, 558 (D. Colo. 1988).

"Article VI of the Colorado Constitution grants the Colorado Supreme Court jurisdiction to regulate and control the practice of law in Colorado to protect the public." *Smith v. Mullarkey,* 121 P.3d 890, 891 (Colo. 2005) (internal citations omitted). Under this authority, the alleged actions taken by Defendant Mullarkey, as Chief Justice of the Colorado Supreme Court, clearly fall within the "state action immunity" doctrine. Moreover, pursuant to the Colorado Supreme Court's authority under Article VI of the Colorado Constitution, the Supreme Court enacted Colo. R. Civ. P. 251.3, which charges the OARC with receiving, investigating, and

prosecuting, where appropriate, disciplinary complaints against Colorado lawyers. *See* Colo. R. Civ. P. 251.3(c)(4). Thus, the OARC's prosecution of disciplinary complaints against Plaintiff Maynard were brought pursuant to a "clearly articulated and affirmatively expressed state policy" and, as such, are similarly encompassed by the state action immunity doctrine. *Hoover,* 466 U.S. at 569. Accordingly, the court finds that to the extent that Plaintiffs seek to amend their complaint to allege a claim that the OARC Defendants and Defendant Mullarkey violated the Clayton Act, Plaintiffs' Motion is properly denied as futile.

## II.    *UNDUE PREJUDICE*

Plaintiffs' Motion also seeks to dismiss certain Defendants. More specifically, as compared with Plaintiffs' original Complaint, Plaintiffs proposed Amended Complaint no longer names the OARC itself, the Colorado Supreme Court, and Colorado Supreme Court Justices Nancy Rice, Nathan Ben Coats, Alex Martinez, and Allison Eid as Defendants. (Resp. at 2.)

The court finds that to permit Plaintiffs' to amend their Complaint to dismiss these Defendants would be unduly prejudicial to Defendants. More specifically, the court first finds that, at best, Plaintiffs would nominally benefit from dismissing these Defendants. And the court also finds that Defendants likely invested significant time, effort, and expense preparing their Motion to Dismiss. (*See* Resp. at 14.) However, if Plaintiffs were granted leave to amend their Complaint solely to dismiss claims against these Defendants, Defendants' Motion to Dismiss would be rendered moot as responsive to an inoperative Complaint and, consequently, Defendants would likely incur additional costs in having to renew their Motion to Dismiss as to the proposed Amended Complaint. As such, because there is little benefit to Plaintiffs in

granting leave to dismiss these defendants, the court finds that Plaintiffs' Motion is properly

denied as unduly prejudicial to Defendants. *United States ex rel. Ritchie v. Lockheed Martin*

*Corp.,* 558 F.3d 1161, 1166 (10th Cir. 2009) (finding that the time, effort, and expense incurred

by the defendant in preparing a motion for summary judgment was sufficiently prejudicial to

deny leave to amend the complaint).

### III.     UNDUE DELAY

Finally, Defendants argue that Plaintiffs' Motion should be denied because Plaintiffs

have unduly delayed seeking to amend their Complaint. (Resp. at 12–14.)  In support of this

position Defendants note that Plaintiff's expressed a desire to amend their complaint at

numerous times dating back to September 21, 2009, but waited to instead respond to Defendants'

Motion to Dismiss with their present Motion.  Based on this court's conclusion that Plaintiffs'

proposed amendments are clearly futile, the court finds that there is at least a colorable argument

that Plaintiffs are using Fed. R. Civ. P. 15 to make their Complaint a moving target to salvage a

lost case. *Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1206 (10th Cir. 2006).  Nonetheless, the

court finds it prudent to allow Plaintiffs additional time to respond to Defendants Motion to

Dismiss.  If Plaintiffs again choose to seek leave to amend their Complaint, pursuant to Rule 15,

Plaintiffs are advised that the court will review any such Motion in conjunction with Defendants'

Motion to Dismiss.

THEREFORE, for the foregoing reasons, it is

**ORDERED** that Plaintiffs shall have 21 days from the date of this Order and Recommendation to respond to Defendants' Motion to Dismiss.  It is further

**RECOMMENDED** that Plaintiffs' "Motion for Leave to File Amended Complaint" (Doc. No. 123) be DENIED without prejudice insofar as it seeks leave to add Victor Boog, Robert Swenson, Bruce Anderson, Judith Anderson, Glenn Porzak, and Nelson Lane as Defendants.  It is further

**RECOMMENDED** that Plaintiffs' "Motion for Leave to File Amended Complaint" (Doc. No. 123) be DENIED, with prejudice, on all remaining grounds.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the

right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 14th day of July, 2010.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge