IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 09-cv-2052-JLK-MEH (consolidated with 10-cv-1850)

In re Alison Maynard and Gerald Lewis civil rights litigation.
_____

ALISON MAYNARD, and
GERALD LEWIS,

    Plaintiffs,

v.

COLORADO SUPREME COURT OFFICE OF ATTORNEY REGULATION, et al.

    Defendants.

[DOCUMENT APPLIES TO BOTH 09-cv-2052 and 10-cv-1850]

_____

ORDER DENYING MOTION TO RECUSE (Doc. 215)
_____

KANE, J.

    These consolidated cases are before me on Plaintiff Alison Maynard's Motion to Recuse (Doc. 215). Ms. Maynard moves for my recusal under 28 U.S.C. §§ 144 and 455(b)(1), both of which compel recusal for personal bias. I have strived in my review of Ms. Maynard's filing to reflect thoughtfully and thoroughly on the assertions made, but cannot agree I have demonstrated, or that I hold, a disqualifying personal bias against her. In the absence of such, I conclude that I have a concomitant duty to sit in these cases and however exhausting, to manage them actively with an eye to their "just, speedy, and inexpensive determination." Fed. R. Civ. P. 1. The Motion to Recuse is DENIED.

Before addressing the standards for recusal, some relevant background information is necessary.

Since August 27, 2009, when the lead case was filed, seven of this court's ten sitting judges – both active and senior – have either recused themselves (Docs. 29 (Brimmer, J.), 32 (Krieger, J.), 148 (Daniel, Chief J.), 189 (Martinez, J.), 194 (Arguello, J.), and Doc. 198 (Blackburn, J.)) or have exercised their prerogative as senior judges to have the case redrawn to a different judge. Doc. 196 (Babcock, J.). In addition, two magistrate judges to whom 28 U.S.C. § 636 case referrals were made have issued orders of recusal. *See* Doc. 44 (Magistrate Judge Shaffer) and Doc. 146 (Magistrate Judge Tafoya). Three of these recusals were the direct result of Plaintiffs' actions in suing a particular judge after he or she issued adverse rulings and/or in filing motions alleging bias on the part of that judicial officer or a colleague on the basis of adverse rulings made or his or her personal or professional relationships with other judges who have been named as party Defendants in these cases. *See* Doc. 91 ("suggesting" Magistrate Judge Tafoya recuse herself on bias grounds and for denying motion to amend); Doc. 191 (alleging conflict and bias on part of Chief Judge Daniel related to assignment of case to Judge Arguello and on part of Judge Arguello based on professional relationships with defendant Judge Wm. Lucero): Doc.194 (where Judge Arguello discusses additional allegations related to her, Judge Lucero and others). *See also* Civil Action Nos. 10-cv-1850-JLK (naming Chief Judge Daniel and Magistrate Judge Tafoya as co-defendants in suit against ten other state and federal judges based on their actions in 09-cv-2052) and

11-cv-901-JLK (stricken)(suing state district judge Michael Martinez to enjoin adverse ruling issued against plaintiffs in related state court proceeding).

Indeed, 15 of the 20 named defendants in the pending consolidated cases are state and federal judges who are being sued on the basis of legal and/or disciplinary rulings adverse to Plaintiffs. Persistence in this pattern of seeking recusals would guarantee Plaintiffs' cases would never be heard to conclusion, or certainly would not be heard to conclusion by any judge other than one willing to rule solely in Plaintiffs' favor. Plaintiffs' pattern of suing, or moving to recuse, judges who rule or who are perceived likely to rule against them requires that any judge presented with a §§ 144 or 455 motion in these cases consider the doctrine of judicial necessity. Where the threat of suit and allegations of bias are omnipresent, they cannot by themselves dissuade a judge from his duty to sit, lest no judge be able to sit at all. *See Switzer v. Berry*, 198 F.3d 1255, 1258 (10th Cir. 2000)("a judge is qualified to decide a case even if he or she would normally be impeded from doing so, when the case cannot be heard otherwise").

*Legal Standards.*

Under 28 U.S.C. § 144, a district judge must recuse if a party files a "timely and sufficient affidavit" establishing that the judge has a personal bias or prejudice against the party seeking recusal, or in favor of the adverse party. 28 U.S.C. § 144, *applied in Winslow v. Lehr*, 641 F. Supp. 1237 (D. Colo. 1986)(Kane, J.). Although all factual allegations in an affidavit filed under § 144 must be presumed true, the presumption is not irrebutable. The affidavit is to be "strictly construed against the affiant and there is a

substantial burden on the moving party to demonstrate that the judge is not impartial." *SEC v. Solv-Ex Corp.*, 164 F. Appx. 765, 766 (10th Cir.2006) (citing *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir.1992)). "'The bias charged must be of a personal nature and must be such as would likely result in a decision on some basis other than what the judge learned from his participation in the case.'" *Id.* (quoting *United States v. Irwin*, 561 F.2d 198, 200 (10th Cir.1977 )).

Under 28 U.S.C. § 455, there is a "considerably broader scope for claims of prejudice and bias." *Glass v. Pfeffer*, 849 F.2d 1261, 1268 (10th Cir.1988). Recusal is appropriate where the judge's impartiality "might reasonably be questioned," or where the judge has "a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b)(1). No affidavits are required. *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987). Under this statute, the judge must recuse when there is the appearance of bias, regardless of whether there is actual bias. *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir.2002). The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality. *Id.* Nevertheless, neither a litigant's suing or threatening to sue a judge, nor the judge's prior adverse rulings, is sufficient to show prejudice or warrant recusal under any standard. *See United States v. Grismore*, 564 F.2d 929 (10th Cir.1977).

*"Personal bias or prejudice" under 28 U.S.C. §§ 144 or 455(b)(1).*

The last page of Ms. Maynard's Motion to Recuse purports to be an "Affidavit" in which she "declare[s] and affirm[s] that the foregoing statements are true to the best of

4

my knowledge, information, recollection, and belief." Mot. to Recuse (Doc. 215), p. 18. I will treat this verified Motion as an "affidavit" for § 144 purposes notwithstanding that Ms. Maynard neither references having made the statements therein under oath or after being sworn, nor declares or affirms the truth of those statements under the penalty of perjury. *See Adams v. Dyer*, 223 Fed. Appx. 757, 764, 2007 WL 431511, 5 (10th Cir. 2007) (in the summary judgment context, a pro se litigant's verified complaint may be treated as an affidavit as long as it satisfies the standards for affidavits outlined in Rule 56)(citing *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir.1988). Applying the same standard here, I will take the statements in the Motion as true to the extent they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4), and proceed to a determination of whether they establish a personal bias or prejudice against Ms. Maynard or in favor of Defendants. *See SEC v. Solv-Ex Corp.*, 164 F. Appx. at 766.

For purposes of disqualification under § 455(b)(1), I rely on the Motion and statements therein as filed, and consider whether they establish a reasonable appearance of, rather than actual, personal bias or prejudice.

1. <u>The initial assignment of these cases to me</u>.

The first basis for Ms. Maynard's claim of bias is my persistence in overseeing the case when Judge Martinez is the appropriate presiding judge. Mot. at 3. Ms. Maynard contends Chief Judge Daniel's transfer of these cases to me was invalid both because it was by direct assignment, rather than random draw in contravention of

D.C.COLO.LCiv.R 40.1, and because Chief Judge Daniel is himself conflicted out of administering these cases because he was previously a named Defendant in 10-cv-1850.[1] Instead, Ms. Maynard repeatedly insists Judge Martinez remains the only valid judge on the case because Plaintiffs have "waived," in accordance with 28 U.S.C. § 455(e), the conflict on which his Order of Recusal (Doc. 189) was premised. *See* Mot. at 3 *with* Objection to Judge Martinez's Recusal, and Waiver of Conflict (Doc. 191) at p.1.

With regard to her first argument, Ms. Maynard misapprehends D.C.COLO.LCiv.R 40.1, which governs the assignment of cases "in general" and does not preclude the Chief Judge from transferring a case to a particular judge with his or her consent in an exercise of his administrative duties. By the time Chief Judge Daniel issued his Transfer Order (Doc. 199, as amended by Doc. 200), all but three of the available judges (Senior Judges Matsch, Miller, and me) in this district had either recused themselves on their own motions or had been forced to recuse by Plaintiffs' actions such that efficiency was served by soliciting consent and transferring the case directly to one of these judges. Nothing in Rule 40.1 prohibits the Chief Judge from adjusting the assignment of cases or ordering the transfer of this case under the circumstances presented. As for Ms. Maynard's arguments with regard to her March 6th "waiver" of Judge Martinez's § 455 conflict (*see* Doc. 191), her insistence that subsection (e) creates a

---

[1] Ms. Maynard's contention that Chief Judge Daniel has a "conflict of interest" because she named him as a Defendant in 10-cv-1850 based on a "false certificate of mailing" he signed in 09-cv-2052, Mot. at pp. 3-4, is spurious and I will comment on it no further.

statutory "entitlement to keep the case before Judge Martinez" remains incorrect.

As an initial matter, a "waiver" under § 455(e) is valid only if "accepted" by the judge to whom it is given ,"preceded by a full disclosure on the record of the basis for disqualification." Judge Martinez did not "accept" (indeed never addressed) Plaintiffs' proffered March 6 "waiver" and certainly did not "accept" it after making the requisite full disclosure on the record. Moreover, a "waiver" of the conflict Judge Martinez described – his "chairmanship of a panel" within this court's Committee on Conduct "[that] investigated facts and issues relating to Plaintiff Maynard's conduct . . . *directly at issue in this case*" (Doc. 189)(emphasis mine) – is one that Judge Martinez would have been prohibited from accepting under § 455(e) under any circumstance.

Waiver under 28 U.S.C. § 455(e) is limited to recusals "where the ground for disqualification arises only under subsection (a)." Recusals premised on a ground for disqualification enumerated in § 455(b) may not be waived. 28 U.S.C. § 455(e)(prohibiting judicial officers from "accept[ing] a waiver of any ground for disqualification enumerated in subsection (b)"). Subsection (b)(1) compels recusal where a judge has a "personal bias . . . *or* personal knowledge of disputed evidentiary facts concerning the proceeding." (Emphasis mine.) Judge Martinez's professed personal knowledge of "facts . . . directly at issue in this case" (Doc. 189 at 2) falls squarely within § 455(b)(1) and constitutes a mandatory ground for disqualification not subject to waiver under subsection (e).

Based on the foregoing, the transfer of these cases by Chief Judge Daniel to me

was in no way improper and I proceed to the question of my recusal under 28 U.S.C. §§ 144 and/or 455(b)(1), as asserted.

## 2. Personal relationships.

Ms. Maynard cites my receipt of an award from the Catholic Lawyers Guild; my attendance at events honoring Defendant Judge Lucero, retired state Justice Mary Mullarkey, and local attorney James Lyons also attended by former Governor Roy Romer, then State Attorney general Ken Salazar, former Denver Mayor Wellington Webb, and other so-called "politicoes [sic]" whom Ms. Maynard purports to have antagonized such that they wish to retaliate against her; some overlap at the law firm of Holme, Roberts & Owen with Defendant attorney Glenn Porzak; my relationship with Chief Judge Daniel; and especially my "close personal relationship" with James Lyons, to state she "strongly believe[s] there is no possibility [she] will get a fair hearing" in this case. Mot. at 6. She attaches excerpts from the Jewish Intermountain News, Denver Bar Association newsletters, legal directories, and her own personal blog posts to document these relationships, but neither the attachments nor the allegations demonstrate actual bias or a reasonable appearance of prejudice sufficient to compel my recusal for bias or prejudice.

The affiant in a § 144 motion has the burden of establishing the requisite grounds for disqualification. *Winslow*, 641 F. Supp. at 1240. "An affidavit is deemed insufficient when it lacks facts showing a personal bias or prejudice, and contains only insufficient conclusions." *Id.* at 1241. Factors that do not merit disqualification for "personal bias or

prejudice" under either statute include "rumor, speculation, beliefs, conclusions, or other non-factual matters . . . ." *Estate of Bishop v. Equinox Int'l Corp.*, 256 F.3d 1050, 1058 (10th Cir.2001).

Ms. Maynard's assertions fail under either test for disqualification. The assertion that my attendance at public events and "rubbing shoulders" with a limited number of public officials, judges, and attorneys whom Ms. Maynard contends have opposed her or have acted in concert to retaliate against her demonstrates neither actual bias nor reasonable appearance of bias, is wholly conclusory and speculative, and does not warrant my recusal.

### 3. The "Chatfield Arboretum" case.

Next Ms. Maynard contends previous rulings I issued against her in the case of *Milne v. United States Army*, Civil Action No. 98-cv-664-JLK, demonstrate actual or at least an appearance of bias and an alliance with public entities and officials and "other powerful people" who have retaliated against her. Mot. at pp. 5-6. Ms. Maynard contends my rulings in the *Milne* case, together with the adverse rulings I have issued in the instant cases to date, demonstrate a "pattern" of unfairness and bias compelling my recusal. I disagree.

I have no recollection of the *Milne* case or of the circumstances underlying my rejection of Ms. Maynard's client's request for temporary restraining order against the United States Army Corps of Engineers. I have since reviewed the docket and note the case was filed and voluntarily dismissed by Ms. Maynard within a span of 35 days from

March 20, 1998 to April 24, 1998. The only action in the case was a hearing on Plaintiff's Motion for Temporary Restraining Order, which I denied from the bench before requiring Plaintiff to file an amended complaint and ordering briefing on his Motion for Preliminary Injunction. *See* Courtroom Mins. (Doc. 5). The rulings made in the *Milne* case are inadequate to demonstrate any actual, personal bias either against Ms. Maynard or in favor of the "powerful" public entities or officials she is now suing – *see Grismore* and *Irwin*, *supra* – nor would such bias appear to a reasonable person to exist on that basis.

4.   My rulings in the instant cases to date.

Ms. Maynard contends that immediately upon coming on these cases, I have issued orders that are "wrongful, undeserved, and excessive in degree." Mot. at 6. In particular Ms. Maynard complains of my orders striking the consolidated case Complaints without prejudice and requiring Plaintiffs to attend a conference with Magistrate Judge Hegarty before refiling them, claiming they "violate due process" and "give advantages to our opponents." *See id.* While I disagree with that characterization (the striking of the Complaints without prejudice should actually benefit Plaintiffs to the extent they use the opportunity to recast their claims in a more tailored and colorable fashion in conformity with Fed. R. Civ. P. Rules 1, 7, 8, and 9 and likely disadvantaged Defendants, whose Motions to Dismiss the Complaints were the subject of a favorable Recommendation from Magistrate Judge Hegarty before I denied them without prejudice in light of my order striking the Complaints), the fact remains that neither allegation forms a real or

material basis for establishing actual or apparent prejudice.  As I stated in a similar series of cases years ago:

> The ordinary processes of litigation require a judge to remain on a case unless he must disqualify himself irrespective of subjective evaluation based on an objective standard set forth by statute. These grounds do not include alleged errors in rulings even when the ruling is such as to amount to a denial of a constitutional right.  The remedy is review of the judge's decision, not replacement of the judge.

*In re Winslow* , 107 B.R. 752, 754 (D.Colo.1989).

     5. <u>The "sanctioning" of Ms. Maynard in the pending consolidated cases</u>.

Ms. Maynard contends that my orders "*sanction[ing]*" her under Fed. R. Civ. P. 11 "without notice or opportunity to defend," Mot. at 7 (emphasis original), establish actual bias, or an appearance thereof.  Because the factual predicate for the contention is false, I decline to recuse on this basis as well.  I have not sanctioned Ms. Maynard in these cases to date.  What I have done, in a series of orders attempting to effectuate my Order Consolidating Cases and Striking Complaints in 09-cv-2052-JLK and 10-cv-1850-JLK , is notify Ms. Maynard, in compliance with applicable Tenth Circuit authority, that her continued signing and filing of impertinent documents in contravention of that Order might subject her to Rule 11 sanctions (*see* Order re Docs. 205 and 206 and Notice re 28 U.S.C. § 1927 and Fed. R. Civ. P. Rule 11 Sanctions (Doc. 207) and Order (Doc. 209)) and then, also consistent with those authorities, to notify her that her subsequent signing and filing of an entirely new Complaint (Civil Action 11-cv-901-JLK)(since stricken) was not reasonable in light of those Orders, constituted a violation of Rule 11, and "subjects

11

her to sanctions." *See* Order (Doc. 211) at 4. Rather than actually sanctioning Ms. Maynard, however, I stated Ms. Maynard would be "provided an opportunity to be heard on my Rule 11 findings before any sanctions are imposed," and "defer[red] hearings on Rule 11 issues and appropriate sanctions for the time being." *Id.*

Ms. Maynard has not been sanctioned and this ground for my recusal under §§ 144 or 455(b) is rejected.

6. <u>Various Judges' *Sua sponte* recusals, the alleged partnership with Defendant Porzak, and Ms. Maynard's 1986 student internship</u>.

The remaining "facts" Ms. Maynard asserts in support of her Motion to Recuse are so remote and tangential that I will discuss them only briefly.

On page 12 of her Motion, after summarizing the various recusals made in these consolidated cases to date, Ms. Maynard states "That [seven] judges and [two] magistrates have recused between the two cases – all *sua sponte*, and several on the basis of their personal relationships with the defendants – shows us that they know our claims have merit, and do not want to rule *against* their friends." (Emphasis original.) The statement is conclusory and a complete *non sequitur*, and forms no basis for disqualification under §§ 144 or 455(b)(1).

That Defendant Porzak and I briefly overlapped at the law firm of Holme, Roberts & Owen when he was a very young attorney also provides no basis for disqualification under §§ 144 or 455(b)(1). I left Holme, Roberts and Owen for the bench in 1977. Mr. Porzak, whose online resume states he was not admitted to the bar until 1973, and I were

never partners in the firm at the same time and even if that fact were germane to the question of personal bias in this case, it is insufficient to warrant recusal 36 years later under either statutory provision.

Finally, Ms. Maynard states she worked in my chambers as a student intern in the Spring of 1986 (a tenure of which I also have no recollection) and suggests the fact she drafted two orders which I then issued with only minor changes is evidence of actual or reasonably conceivable bias. Indeed, the only rational inference from the statement would be that the experience inures to her benefit. The suggestion is tenuous in the extreme and insufficient to disqualify me under any legal standard. I do encourage law students to take the occasional crack at drafting an order and if, on review of the draft it appears sound and well written, I will use it. It is a testament to the law student Ms. Maynard was at the time her averred draft orders passed muster in this manner. Neither the fact that I issued such orders or provided Ms. Maynard with an internship opportunity in 1986 forms any basis for my recusal in a case in which she is a litigant or attorney 25 years later.

*Disqualification under § 455(a)*

While Ms. Maynard does not move to recuse me under 28 U.S.C. § 455(a), the request is implicit and I affirmatively decline to recuse myself under that subsection as well. My impartiality in this case cannot reasonably be questioned based on the hyperbolic and tangential affronts described and divined by Ms. Maynard in her Motion and the attachments thereto. "[S]ection 455(a) must not be so broadly construed that it

becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestions of personal bias or prejudice." *Franks v. Nimmo, et al.*, 796 F.2d 1230 (10th Cir.1986)(quoting *United States v. Hines*, 696 F.2d 722, 729 (10th Cir.1982)).  I am open to ruling on the merits of every well-plead claim presented by Ms. Maynard and her co-Plaintiff Mr. Lewis and to consider impartially every representation they make in a document signed and filed after an inquiry reasonable under the circumstances.

The Motion to Recuse (Doc. 215) is DENIED.

Dated this 21st day of April, 2011.        **s/John L. Kane**
                                            SENIOR U.S. DISTRICT JUDGE